**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

KATRINA JOYCE UNBEHAGEN,     )
                               )
               Plaintiff,    )
                               )
            v.             )      1:18CV704
                               )
ANDREW M. SAUL,         )
Commissioner of Social Security,[1]  )
                               )
              Defendant.   )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Katrina Joyce Unbehagen, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 12; see also Docket Entry 11 (Plaintiff's Memorandum); Docket Entry 13 (Defendant's Memorandum); Docket Entry 14 (Plaintiff's Reply)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] The United States Senate confirmed Andrew M. Saul as the Commissioner of Social Security on June 4, 2019, and he took the oath of office on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Nancy A. Berryhill as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff applied for SSI. (Tr. 206-13.) Upon denial of that application initially (Tr. 83-100, 119-22) and on reconsideration (Tr. 101-18, 132-41), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 142-45). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 31-64). The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 15-25.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 204-05, 318-21), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] has not engaged in substantial gainful activity since December 31, 2014, the application date.

2. [Plaintiff] has the following severe impairment: status post cerebrovascular accident (CVA) with history of coronary artery disease (CAD).

. . .

3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

4. . . . [Plaintiff] has the residual functional capacity to perform medium exertional work . . . with the following limitations. She can occasionally climb ladders, ropes, or scaffolds. She can frequently climb ramps or stairs, balance, stoop, crouch, kneel, and

crawl. She should avoid concentrated exposure to
unprotected heights.

. . .

5. [Plaintiff] is capable of performing past relevant
work as a picket and manager. This work does not require
the performance of work-related activities precluded by
[Plaintiff's] residual functional capacity.

. . .

6. [Plaintiff] has not been under a disability, as
defined in the [Act], since December 31, 2014, the date
the application was filed.

(Tr. 20-25 (bold font and internal parenthetical citations
omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits."  Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope
of [the Court's] review of [such a] decision . . . is extremely
limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).
Plaintiff has not established entitlement to relief under the
extremely limited review standard.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead,
the Court "must uphold the factual findings of the ALJ if they are
supported by substantial evidence and were reached through
application of the correct legal standard."  Hines, 453 F.3d at 561

(internal brackets and quotation marks omitted).  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence."  Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted).  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted).  "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]  "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition."  Id.  "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled."  Id.

This sequential evaluation process ("SEP") has up to five steps:  "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of

_____

[2]  The Act "comprises two disability benefits programs.  The Disability Insurance Benefits Program provides benefits to disabled persons who have contributed to the program while employed.  [SSI] provides benefits to indigent disabled persons.  The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical."  Craig, 76 F.3d at 589 n.1 (internal citations omitted).

specified impairments, or is otherwise incapacitating to the extent
that the claimant does not possess the residual functional capacity
to (4) perform [the claimant's] past work or (5) any other work."
Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475
n.2 (4th Cir. 1999).[3]  A finding adverse to the claimant at any of
several points in the SEP forecloses an award and ends the inquiry.
For example, "[t]he first step determines whether the claimant is
engaged in 'substantial gainful activity.' If the claimant is
working, benefits are denied.  The second step determines if the
claimant is 'severely' disabled.  If not, benefits are denied."
Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at
each of the first three steps, "the claimant is disabled." Mastro,
270 F.3d at 177.  Alternatively, if a claimant clears steps one and
two, but falters at step three, i.e., "[i]f a claimant's impairment
is not sufficiently severe to equal or exceed a listed impairment,
the ALJ must assess the claimant's residual functional capacity
('RFC')." Id. at 179.[4]  Step four then requires the ALJ to assess

---

[3]  "Through the fourth step, the burden of production and proof is on the
claimant.  If the claimant reaches step five, the burden shifts to the
[Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[4]  "RFC is a measurement of the most a claimant can do despite [the claimant's]
limitations." Hines, 453 F.3d at 562 (noting that administrative regulations
require RFC to reflect claimant's "ability to do sustained work-related physical
and mental activities in a work setting on a regular and continuing basis . . .
[which] means 8 hours a day, for 5 days a week, or an equivalent work schedule"
(internal emphasis and quotation marks omitted)).  The RFC includes both a
"physical exertional or strength limitation" that assesses the claimant's
"ability to do sedentary, light, medium, heavy, or very heavy work," as well as
"nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658
(continued...)

whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## B.  Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ erred by finding that Plaintiff's right knee [osteoarthritis] was not a[ medically determinable impairment]"

---

[4] (...continued)
F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)."  Hines, 453 F.3d at 562-63.

[5]  A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

(Docket Entry 11 at 4 (bold font omitted); <u>see also</u> Docket Entry 14 at 1-3); and

2) "[r]emand is required because at the time [the ALJ's] decision was issued, [her] appointment did not comply with the Appointments Clause" (Docket Entry 11 at 7 (bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 13 at 5-23.)

## 1. Severity of Right Knee Osteoarthritis

In Plaintiff's first assignment of error, she maintains that "[t]he ALJ erred by finding that Plaintiff's right knee [osteoarthritis] was not a[ medically determinable impairment]." (Docket Entry 11 at 4 (bold font omitted); <u>see also</u> Docket Entry 14 at 1-3.) In particular, Plaintiff takes issue with the ALJ's finding that Plaintiff's "acute right knee pain" constituted a "'symptom[]'" but not a "'medically determinable impairment[],'" because "'[a] claimant's symptoms or combination of symptoms alone cannot be the basis for a finding of an impairment, regardless of how genuine the complaints may be, without medical signs and/or laboratory findings demonstrating the existence of the impairment.'" (Docket Entry 11 at 4 (quoting Tr. 21).) In that regard, Plaintiff contends that x-rays and examination findings documented her right knee osteoarthritis (<u>see</u> <u>id.</u> at 4-5 (citing Tr. 604, 612, 614, 618, 619, 621, 707, 708, 737, 740, 742-43, 747-

48)), thus contradicting "[t]he ALJ's characterization of [Plaintiff's] right knee impairment as no more than subjective complaints" (id. at 4 (citing Tr. 21)). Plaintiff characterizes the ALJ's alleged error as "particularly harmful because [Plaintiff] testified that she could only stand . . for about 10 minutes and walk for 10[ to ]15 [minutes] without her walker" (id. at 6 (citing Tr. 49-50) (internal citation omitted)), "[t]he [VE] testified that if [Plaintiff] were only able to walk for 50 yards with a walker, she would be unable to work" (id. (citing Tr. 60-61)), and "the ALJ's RFC for medium work is exertionally demanding requiring up to six hours of walking and up to six hours of standing per eight[-]hour workday" (id. at 6-7; see also 20 C.F.R. § 416.967(c)). Plaintiff's contentions fall short.

"At step 2 of the [SEP], [the ALJ] determine[s] whether an individual has a severe medically determinable physical or mental impairment or combination of impairments that has lasted or can be expected to last for a continuous period of at least 12 months or end in death." Social Security Ruling 16-3p, Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *11 (Oct. 25, 2017) ("SSR 16-3p"). An impairment fails to qualify as "severe" if it constitutes "only a slight abnormality . . . which would have no more than a minimal effect on an individual's ability . . . to perform basic work activities." Social Security Ruling 85-28, Titles II and XVI: Medical Impairments that Are Not

Severe, 1985 WL 56856, at *3 (1985) ("SSR 85-28").  Applicable

regulations further identify "basic work activities" as including:

> (1) Physical functions such as walking, standing,
> sitting, lifting, pushing, pulling, reaching, carrying,
> or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple
> instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers
> and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 416.922(b).  Plaintiff bears the burden of proving

severity at step two.  Hunter, 993 F.2d at 35; see also Kirby v.

Astrue, 500 F.3d 705, 708 (8th Cir. 2007) ("Severity is not an

onerous requirement for the claimant to meet, but it is also not a

toothless standard . . . ." (internal citation omitted)).

As an initial matter, contrary to Plaintiff's allegations

(see Docket Entry 11 at 4-7), the ALJ did not deem Plaintiff's

right knee osteoarthritis a non-medically determinable impairment;

rather, the ALJ found Plaintiff's "acute right knee pain" a non-

medically determinable impairment, because symptoms (such as pain)

alone cannot form the basis for a finding of an impairment.  (Tr.

21 (emphasis added).)[6]  In contrast, the ALJ found that Plaintiff's

---

[6] In an apparent effort at thoroughness, the ALJ essentially catalogued all of
Plaintiff's diagnoses in the record as either severe, non-severe, or non-
medically determinable impairments.  (See Tr. 20-21.)  "Acute pain of right knee"
(continued...)

"osteoarthritis of the right knee" constituted a non-severe medically determinable impairment, because it did not "cause more than minimal limitation in [Plaintiff's] ability to perform basic work-related activities," and further noted that Plaintiff characterized her knee injections as "effective." (Tr. 20 (citing Tr. 690-726).)

Moreover, the ALJ did not err in classifying Plaintiff's right knee osteoarthritis as non-severe. An x-ray in July 2016 of Plaintiff's right knee showed only "mild tibiofemoral joint space narrowing" and "small osteophytes at the lateral tibial plateau" (Tr. 618 (emphasis added)), which Plaintiff's treating physician interpreted as "negative for significant osteoarthritis of the knee joint" (Tr. 621 (emphasis added)). A follow-up x-ray in February 2017 revealed "[t]ricompartmental [degenerative joint disease]" reported as "unchanged" from the July 2016 x-ray. (Tr. 743 (emphasis added).) Furthermore, treating providers noted only mild findings on examination of Plaintiff's right knee (see Tr. 614 (noting tenderness to palpation over pes anserine bursa but full range of motion and "[m]inimal" crepitus), 707 (finding "crepitus and medial joint line tenderness" but no effusion, no ligamentous instability, and full range of motion), 740-42 (documenting tenderness, mildly reduced flexion, and 4/5 strength but no effusion, intact sensation, and a non-antalgic gait)), and, as the

---

[6] (...continued)
appears in the record as a diagnosis on January 30, 2017. (Tr. 708.)

ALJ recognized (see Tr. 20), Plaintiff reported multiple times that corticosteroid injections helped to relieve her knee pain (see Tr. 43, 707, 737, 745). Thus, as outlined above, substantial evidence supports the ALJ's finding that Plaintiff's right knee osteoarthritis did not "cause more than minimal limitation in [her] ability to perform basic work-related activities." (Tr. 20.)

Even if the ALJ should have deemed Plaintiff's right knee osteoarthritis a severe impairment, any such error would remain harmless under the circumstances presented by this case. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). Where an ALJ finds at least one severe impairment, any failure to identify more generally cannot constitute reversible error, because, "upon determining that a claimant has one severe impairment, the [ALJ] must continue with the remaining steps in his disability evaluation." Maziarz v. Secretary of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987); accord Oldham v. Astrue, 509 F.3d 1254, 1256-57 (10th Cir. 2007); Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Lauver v. Astrue, No. 2:08CV87, 2010 WL 1404767, at *4 (N.D.W. Va. Mar. 31, 2010) (unpublished); Washington v. Astrue, 698 F. Supp. 2d 562, 579 (D.S.C. 2010); Jones v. Astrue, No. 5:07CV452, 2009 WL 455414,

at *2 (E.D.N.C. Feb. 23, 2009) (unpublished). Moreover, a finding at step two that Plaintiff has a severe impairment does not require the ALJ to include any limitations arising from such impairment in the RFC:

> The determination of a "severe" impairment at step two of the sequential evaluation process is a de minimis test, designed to weed out unmeritorious claims. See Bowen v. Yuckert, 482 U.S. 137, [153] (1987). A finding of de minimis limitations is not proof that the same limitations have the greater significant and specific nature required to gain their inclusion in an RFC assessment at step four. See, e.g., Sykes v. Apfel, 228 F.3d 259, 268 n.12 (3d Cir. 2000).

Hughes v. Astrue, No. 1:09CV459, 2011 WL 4459097, at *10 (W.D.N.C. Sept. 26, 2011) (unpublished).

Here, having found Plaintiff suffered from at least one severe impairment (see Tr. 20), the ALJ proceeded through step three to step four of the SEP and sufficiently addressed Plaintiff's right knee osteoarthritis (whether classified as severe or not) by including limitations on lifting, carrying, pushing, pulling, climbing, balancing, stooping, kneeling, crouching, and crawling in the RFC and dispositive hypothetical question to the VE. (See Tr. 21, 58.) Significantly, beyond the non-specific assertion that the ALJ should have "factor[ed]" Plaintiff's "limited ability to engage in weightbearing activities" into the RFC (Docket Entry 11 at 7), Plaintiff has not identified any specific, additional limitations that a finding of severe right knee osteoarthritis would have compelled the ALJ to include in the RFC, let alone demonstrated

that such additional limitations would have precluded her past relevant work. (See Docket Entry 11 at 4-7.)

Plaintiff's attempt to establish prejudice arising from the ALJ's non-severity finding by relying on her own testimony regarding how long she can stand (10 minutes) and walk (10 to 15 minutes) without her walker (see Docket Entry 11 at 6 (citing Tr. 49-50)), as well as the VE's testimony that an individual able to walk only 50 yards with a walker could not perform the jobs she cited (id. (citing Tr. 60-61)), fails for three reasons. First, the ALJ did not fully credit Plaintiff's subjective symptom reporting (see Tr. 22), and Plaintiff did not challenge that finding (see Docket Entry 11). Second, the record contains no statement from a treating provider regarding the medical necessity of Plaintiff's walker, and Plaintiff admitted that she purchased the walker without a prescription from a physician (see Tr. 39, 252, 487). Third, the record reflects Plaintiff's use of the walker at a May 2015 consultative examination (see Tr. 477), which predated her first complaint of right knee pain by over one year (see Tr. 604-05 (reflecting complaint of knee pain on June 20, 2016, but no specific treatment for same)). Thus, Plaintiff's use of the walker demonstrates neither that her right knee osteoarthritis necessitated a walker nor that it resulted in any specific limitations on her ability to stand and walk.

In short, Plaintiff's first assignment of error fails as a matter of law.

## 2. Appointments Clause

Lastly, Plaintiff argues that "[r]emand is required because at the time [the ALJ's] decision was issued, [her] appointment did not comply with the Appointments Clause [of the United States Constitution]." (Docket Entry 11 at 7 (bold font and single-spacing omitted).) In support of that argument, Plaintiff relies on Lucia v. Securities & Exch. Comm., 585 U.S. ___, 138 S. Ct. 2044 (2018), wherein "the Supreme Court held that ALJs of the Securities and Exchange Commission ('SEC') [we]re inferior officers subject to the Appointments Clause," requiring "appoint[ment] by the President, Courts of Law, or Heads of Departments" (Docket Entry 11 at 7 (citing Lucia, 585 U.S. at ___, 138 S. Ct. at 2053-54, U.S. Const. Art. 2, § 2, cl. 2)). Plaintiff notes that the Supreme Court concluded that "'a new hearing before a properly appointed official'" constituted the "'appropriate remedy'" to cure the constitutional error. (Id. at 8 (quoting Lucia, 585 U.S. at ___, 138 S. Ct. at 2055) (internal quotation marks omitted)). According to Plaintiff, "because the ALJ who presided over this case was not appointed by the President, the Courts of Law or the Commissioner of the SSA at the time her decision was issued on November 16, 2017, her decision was issued *ultra vires* and the appropriate remedy pursuant to *Lucia* is for the case to be remanded to a

different, now constitutionally appointed ALJ." (Id. (internal citation omitted).)

In response, the Commissioner assumes _arguendo_ that the Appointments Clause applies to the SSA's ALJs (Docket Entry 13 at 14-15 n.4), but maintains that "Plaintiff's failure to raise her Appointments Clause challenge at any point in the administrative proceedings forfeit[ed] her claim" (id. at 23). According to the Commissioner, "requiring a claimant to present an Appointments Clause challenge to the agency to preserve it for judicial review conforms to _Lucia_'s instruction that only a party 'who makes a timely challenge . . . is entitled to relief'" (id. at 21 (citing _Lucia_, 585 U.S. at ___, 138 S. Ct. at 2055)), and "serve[s] important efficiency interests . . . in the context of [the] SSA's adjudicative system, which issues hundreds of thousands of decisions each year" (id. at 22).

The Appointments Clause provides as follows:

> [The President of the United States] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, § 2, cl. 2. The Supreme Court in _Lucia_, relying on its prior case _Freytag v. Commissioner of Int. Rev._, 501 U.S. 868 (1991), held that the SEC's ALJs qualified as "inferior Officers" rather than federal employees, because they "hold a

continuing office established by law" and "exercise . . . significant discretion when carrying out . . . important functions." <u>Lucia</u>, 585 U.S. at \_\_\_, 138 S. Ct. at 2053 (internal quotation marks omitted). However, the Supreme Court emphasized that the plaintiff in <u>Lucia</u> had made a timely constitutional challenge to the ALJ who decided his claim by contesting the validity of the ALJ's appointment before the SEC. <u>Id.</u> at \_\_\_, 138 S. Ct. at 2055. Notwithstanding that language in <u>Lucia</u>, Plaintiff contends that she did not forfeit her Appointments Clause challenge before this Court.

**a. Issue Exhaustion under <u>Sims</u> and <u>Pearson</u>**

Plaintiff first asserts that the Supreme Court deemed a judicially-created requirement of issue exhaustion inappropriate in the non-adversarial context of the SSA, concluding that "claimants 'need not [] exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues.'" (Docket Entry 11 at 8 (quoting <u>Sims v. Apfel</u>, 530 U.S. 103, 112 (2000) (plurality opinion).) Plaintiff further posits that "there is no issue exhaustion requirement in SSA cases in the Fourth Circuit." (<u>Id.</u> at 11 (citing <u>Pearson v. Colvin</u>, 810 F.3d 204, 208-09 (4th Cir. 2015).)

As the Commissioner argues, <u>Sims</u> holds "that claimants need not 'exhaust issues in a request for review <u>by the Appeals Council</u> in order to preserve judicial review of those issues'" (Docket

Entry 13 at 17 (quoting Sims, 530 U.S. at 111) (emphasis supplied by Commissioner)), but did not address the question of "'[w]hether a claimant must exhaust issues before the ALJ'" (id. (quoting Sims, 530 U.S. at 106)). Furthermore, following Sims, numerous federal courts, including this Court, have continued to find that claimants forfeited the right to bring issues on judicial review that they failed to raise before the ALJ. See, e.g., Shaibi v. Berryhill, 883 F.3d 1102, 1109 (9th Cir. 2017) ("[A]t least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal."); Anderson v. Barnhart, 344 F.3d 809, 814 (8th Cir. 2003) (holding the claimant's failure to raise issue before ALJ "waived [the claim] from being raised on appeal"); Mills v. Apfel, 244 F.3d 1, 8 (1st Cir. 2001) (indicating court "ha[d] no intention of extending th[e] rule [in Sims] . . . to the failure of an applicant to raise an issue at the ALJ level" and deeming issue not raised before ALJ waived); Bunton v. Colvin, No. 1:10CV786, 2014 WL 639618, at *5 (M.D.N.C. Feb. 18, 2014) (unpublished) (finding waiver of issue where the plaintiff failed to raise it at ALJ's hearing), recommendation adopted, slip op. (M.D.N.C. Mar. 10, 2014) (Schroeder, J.); Stepinski v. Astrue, No. CA 11-183, 2012 WL 3866678, at * 9-10 (D.R.I. Aug. 6, 2012) (unpublished) ("The [c]ourt views unfavorably the silence of [the p]laintiff's counsel at the hearing regarding the omission about which he now complains.

Reversal and remand . . . would encourage other counsel to remain silent in similar circumstances. This [c]ourt is disinclined to provide such an incentive. Accordingly, the [c]ourt finds that [the p]laintiff waived this issue by failing to raise it before the ALJ." (internal citations omitted)); <u>see also</u> <u>Sayre v. Chater</u>, 113 F.3d 1232 (table), 1997 WL 232305, at *2 (4th Cir. May 8, 1997) (unpublished) (finding, prior to <u>Sims</u>, issue on appeal waived where "nothing in the record [] suggest[ed] that [the plaintiff] provided either the ALJ or the Appeals Council with the opportunity to consider" issue).

Furthermore, Plaintiff's assertion that "there is no issue exhaustion requirement in SSA cases in the Fourth Circuit" (Docket Entry 11 at 11) overstates the holding in <u>Pearson</u>. In that case, the Fourth Circuit held only that Social Security Ruling 00-4p, <u>Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions</u>, 2000 WL 1898704 (Dec. 4, 2000) ("SSR 00-4p"), required ALJs "<u>independently</u> [to] identify conflicts between the [VE's] testimony and the [<u>Dictionary of Occupational Titles</u> ('<u>DOT</u>')]." <u>Pearson</u>, 810 F.3d at 209 (emphasis added). Thus, in the specific context of SSR 00-4p, <u>Pearson</u> holds that claimants need not raise the issue of an apparent conflict between the VE's testimony and the <u>DOT</u> during the hearing before the ALJ. <u>Id.</u> <u>Pearson</u> does not stand for the much

broader position, urged by Plaintiff, that "no issue exhaustion requirement in SSA cases [exists] in the Fourth Circuit" (Docket Entry 11 at 11). See Diane S.P. v. Berryhill, 379 F. Supp. 3d 498, 526 n.18 (E.D. Va. 2019) (finding "not persua[sive]" the "plaintiff's suggestion that the Fourth Circuit's ruling[] in Pearson . . . speak[s] to whether a claimant who fails to notify the SSA about her Appointments Clause challenge timely presents it when seeking judicial review"), appeal filed, No. 19-1681 (4th Cir. June 25, 2019).

Accordingly, neither Sims nor Pearson excuse Plaintiff's failure to raise her Appointments Clause challenge before the SSA.

**b. The Rationale of Muhammad**

Plaintiff acknowledges that "there have been a series of district [court] cases finding that Appointments Clause challenges must be raised before the [SSA], [but argues that] absent from most of these decisions is an evaluation of case law regarding an agency's institutional competency to handle . . . constitutional challenges." (Docket Entry 11 at 11 (internal citations omitted).) According to Plaintiff, the Court should instead follow the magistrate judge's recommendation in Muhammad v. Berryhill, Civ. No. 18-172, slip op. (E.D. Pa. Nov. 2, 2018) (unpublished), which found that the plaintiff had not forfeited his Appointments Clause challenge because "'[t]he justification for [requiring] a timely challenge loses force . . . when raising such a claim would be

futile and not achieve the intended goal of getting things right in the first place.'" (Docket Entry 11 at 12 (quoting <u>Muhammad</u>, slip op. at 1).)

As an initial matter, after briefing closed in the instant case, the district judge overruled the magistrate judge's recommendation in <u>Muhammad</u>, and held that the plaintiff had forfeited his Appointments Clause challenge by failing to raise it before the ALJ. <u>Muhammad v. Berryhill</u>,381 F. Supp. 3d 462, 465-71 (E.D. Pa. May 23, 2019). However, because other cases exist that excuse the plaintiffs' failure to raise their Appointments Clause challenges before the ALJ based on reasoning similar to that of the magistrate judge in <u>Muhammad</u>, <u>see, e.g.</u>, <u>Kellett v. Berryhill</u>, Civ. No. 18-4757, 2019 WL 2339968 (E.D. Pa. June 3, 2019) (unpublished), <u>appeal filed</u>, No. 19-2795 (3d Cir. Aug. 9, 2019); <u>Probst v. Berryhill</u>, 377 F. Supp. 3d 578 (E.D.N.C. 2019), <u>appeal filed</u>, No. 19-1529 (4th Cir. May 17, 2019); <u>Bradshaw v. Berryhill</u>, 372 F. Supp. 3d 349 (E.D.N.C. 2019), <u>appeal filed</u>, No. 19-1531 (4th Cir. May 17, 2019), the undersigned will address Plaintiff's remaining arguments based on the magistrate judge's reasoning in <u>Muhammad</u>.[7]

---

[7] Given the pendency of appeals in the Fourth Circuit involving the forfeiture of Appointments Clause challenges, the Court could, in its discretion, elect to stay the present case pending resolution of those issues by the Fourth Circuit. However, in light of this Court's prior decisions uniformly finding Appointments Clause challenges forfeited when not raised before the SSA, <u>see</u> <u>Hodge v. Saul</u>, No. 1:18CV206, 2019 WL 3767130, at *5 (M.D.N.C. Aug. 9, 2019) (unpublished) (Peake, M.J.), <u>objections filed</u>, Docket Entry 19 (M.D.N.C. Aug. 23, 2019); <u>Williams v. Saul</u>, No. 1:18CV539, 2019 WL 3582374, at *5-6 (M.D.N.C. Aug. 6, 2019) (unpublished) (Peake, M.J.), <u>recommendation adopted</u>, slip op. (M.D.N.C. Aug. 27, 2019) (Biggs, J.); <u>Clinton v. Saul</u>, No. 1:18CV266, 2019 WL 3556946, at *10-11
(continued...)

Plaintiff points out that the magistrate judge in Muhammad relied on Freytag to recommend that, "'[b]ecause the alleged defect in the appointment of SSA ALJs is an important issue that goes to the validity of SSA proceedings, it should be considered even if not properly preserved before the ALJ.'" (Docket Entry 11 at 13 (quoting Muhammad, 381 F. Supp. 3d at 475 (in turn quoting Freytag, 501 U.S. at 878-79 ("includ[ing] Appointments Clause objections to judicial officers in the category of nonjurisdictional structural constitutional objections that could be considered on appeal whether or not they were ruled on below" (emphasis added)))).) Indeed, citing "'the strong interest of the federal judiciary in maintaining the constitutional plan of separation of powers,'" the Supreme Court in Freytag concluded that the facts before it constituted "one of those rare cases in which [the Supreme Court] should exercise [its] discretion to hear [the] petitioners' [Appointments Clause] challenge." Freytag, 501 U.S. at 879 (quoting Glidden Co. v. Zdanok, 370 U.S. 530, 536 (1962)) (emphasis added). However, as persuasively reasoned by the district judge in rejecting the magistrate judge's reasoning in Muhammad:

---

[7] (...continued)
(M.D.N.C. Aug. 5, 2019) (unpublished) (Peake, M.J.), recommendation adopted, slip op. (M.D.N.C. Aug. 29, 2019) (Eagles, J.); Smith v. Berryhill, No. 1:18CV329, slip op. (M.D.N.C. Apr. 23, 2019) (Webster, M.J.), recommendation adopted, slip op. (M.D.N.C. May 10, 2019) (Biggs, J.); Martin v. Berryhill, No. 1:18CV115, slip op. (M.D.N.C. Dec. 11, 2018) (Webster, M.J.), recommendation adopted, slip op. (M.D.N.C. Jan. 4, 2019) (Eagles, J.), this Recommendation addresses Plaintiff's Appointments Clause claim under Lucia, as well as the additional, non-Lucia claim presented for resolution.

Since _Freytag_, the Supreme Court has not clarified the types of "rare cases" that are excused from the failure to raise a claim before an agency, although the [Supreme] Court long before _Lucia_ imposed a timeliness requirement for Appointments Clause challenges. In _Ryder[ v. United States_, 515 U.S. 177 (1995)], the [Supreme] Court held that "one who makes a _timely_ challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred." [_Id._] at 182-83 (emphasis added). The [Supreme] Court explained that "[a]ny other rule would create a disincentive to raise Appointments Clause challenges with respect to questionable judicial appointments." _Id._ at 183. _Lucia_ expressly reaffirmed this requirement. _See Lucia_, 138 S. Ct. at 2055 (citing _Ryder_, 515 U.S. at 182-83).

Nothing about [the plaintiff's] case warrants excusing his failure to timely raise the Appointments Clause challenge before the ALJ and throughout the administrative process. While [the plaintiff's] challenge is neither 'frivolous nor disingenuous,' _see Freytag_, 501 U.S. at 900, there is nothing rare about his case. "[R]egularly excusing forfeiture of Appointments Clause challenges under _Freytag_ risks eroding the rule in _Ryder_, decided nearly four years after _Freytag_ and recently reaffirmed in _Lucia_, that an Appointments Clause challenge must be 'timely' to afford the challenger relief." _Abbington[ v. Berryhill_, Civ. No. 1:17-552,] 2018 WL 6571208, at *7 [(S.D. Ala. Dec. 13, 2018) (unpublished)]. Applying _Freytag_'s rare case exception here would disincentivize petitioners, particularly those like [the plaintiff] who are represented by counsel, from raising Appointments Clause challenges at the administrative level. Indeed, regularly permitting unsuccessful claimants to raise such challenges for the first time on judicial review would "encourage the practice of 'sandbagging' . . . ." [_Id._] (citing _Freytag_, 501 U.S. at 895) (Scalia, J., concurring in part and concurring in the judgment).

_Muhammad_, 381 F. Supp. 3d at 469-70 (parallel citations omitted).

Given the Supreme Court's reaffirmation of an exhaustion requirement for Appointments Clause challenges in its post-_Freytag_

decisions in <u>Ryder</u> and <u>Lucia</u>, the Court should not read <u>Freytag</u> as adopting a rule that <u>all</u> Appointments Clause challenges qualify as "rare cases" that justify the excusal of forfeiture.

Nor do Plaintiff's arguments aimed at establishing that her circumstances present the "rare case" envisioned by <u>Freytag</u> warrant such a conclusion. First, Plaintiff points to the magistrate judge's recognition in <u>Muhammad</u> that, before <u>Lucia</u>, "the shifting positions of the Department of Justice regarding the status of ALJs as inferior officers 'made [an Appointments Clause challenge] unforeseeable,'" particularly "'because many SSA claimants are unrepresented by counsel and lack any understanding of how SSA ALJs are appointed, or why it makes any difference.'" (Docket Entry 11 at 13 (quoting <u>Muhammad</u>, 381 F. Supp. 3d at 475).) That argument misses the mark. Although the Supreme Court decided <u>Lucia</u> on June 21, 2018, 10 days <u>after</u> the Appeals Council denied Plaintiff's request for review on June 11, 2018 (<u>see</u> Tr. 1-6), the Supreme Court decided <u>Freytag</u> in 1991 and, in <u>Lucia</u>, found that <u>Freytag</u> provided the precise test the court needed to gauge whether the SEC's ALJs constituted "inferior Officers" subject to the Appointments Clause, <u>see</u> <u>Lucia</u>, 585 U.S. at ___, 138 S. Ct. at 2053. Thus, long-standing authority existed during the time Plaintiff's claim remained pending before the ALJ under which Plaintiff, <u>proceeding through counsel</u>, could have asserted her Appointments Clause challenge. See <u>Island Creek Coal Co. v.</u>

Wilkerson, 910 F.3d 254, 257 (6th Cir. 2018) ("[The plaintiff] cannot hold the line on the ground that its Appointments Clause challenge lacked merit until the Supreme Court decided [Lucia]. No precedent prevented the [plaintiff] from bringing the constitutional claim before then. Lucia itself noted that existing case law 'says everything necessary to decide this case.'"); Lee v. Berryhill, No. 2:18CV214, 2019 WL 1299366, at *2 n.1 (E.D. Va. Mar. 21, 2019) (unpublished) (rejecting the plaintiff's assertion "that she raised her claim at the earliest possible opportunity after Lucia was decided," because the "[p]laintiff, represented by counsel, had ample notice of the ability to raise the ALJ appointment issue during her administrative proceeding in light of the . . . fact that the Lucia opinion is self-described as an application of existing Supreme Court precedent") (internal quotation marks and citation omitted) (emphasis in original) (citing Lucia, 585 U.S. at ___, 138 S. Ct. at 2053 ("Freytag says everything necessary to decide this case.")).

Plaintiff additionally argues that "'it makes little sense to require a claimant to raise an issue before an ALJ who is powerless to resolve it.'" (Docket Entry 11 at 14 (quoting Muhammad, 381 F. Supp. 3d at 477).) In that regard, Plaintiff contends that, as Muhammad recognized, even if she had raised the Appointments Clause issue before the SSA, Revised Emergency Message 18003 ("EM-18003 REV") would have precluded both the ALJ and the Appeals Council

from entertaining her challenge.  (Id. (citing Muhammad, 381 F. Supp. 3d at 477-78 (in turn citing EM-18003 REV, Important Information Regarding Possible Challenges to Appointment of Administrative Law Judges in SSA's Administrative Process (June 25, 2018), as "acknowledg[ing] the futility of raising a Lucia claim at the ALJ level")).)

In both the original Emergency Message 18003 ("EM-18003"), issued while Lucia remained pending before the Supreme Court on January 30, 2018, and in EM-18003 REV, the SSA instructed that, "[b]ecause [the] SSA lacks the authority to finally decide constitutional issues such as these, ALJs will **not** discuss or make any findings related to the Appointments Clause issue on the record" EM-18003 § C.1, EM-18003 REV § C.1, and "the [Appeals Council] will **not** acknowledge, make findings related to, or otherwise discuss the Appointments Clause issue" EM-18003 § C.3, EM-18003 REV. § C.3.[8]  Thus, no Emergency Message signaling the "futility" of raising an Appointments Clause challenge with either the ALJ or the Appeals Council existed from the time Plaintiff first requested a hearing before an ALJ (November 16, 2015) to the date of the ALJ's decision (November 16, 2017).  That circumstance

_____

[8] On August 6, 2018, the SSA revised EM-18003 REV to advise that, "[o]n July 16, 2018, the Acting Commissioner ratified the appointment of ALJs . . . and approved their appointments as her own in order to address any Appointments Clause questions involving SSA claims," and, with regard to Appointments Clause challenges received before July 16, 2018, to instruct ALJs to "acknowledge[ such challenges] in the record . . . for any necessary action" EM-18003 REV 2, § C.1, and the Appeals Council to "consider the challenge in the context of the facts of the case," EM-18003 REV 2, § C.3.

defeats Plaintiff's futility argument.  See Bennett v. Berryhill,
No. 2:17CV520, 2019 WL 1104186, at *11 (E.D. Va. Feb. 15, 2019)
(unpublished) (finding EM-18003, issued after ALJ's decision,
irrelevant, because "[t]he fact that ALJs were directed at some
later time to not address the same argument [the plaintiff] has now
raised ha[d] no bearing on the ALJ's or the Commissioner's [prior]
ability to address [the plaintiff's] Appointment Clause
challenge"), recommendation adopted, 2019 WL 1102203 (E.D. Va. Mar.
8, 2019) (unpublished).

Moreover, even if EM-18003 or EM-18003 REV had applied while
Plaintiff's case remained before the ALJ, she could not establish
the futility of raising her Appointments Clause challenge before
the SSA.  As the district judge in Muhammad reasoned:

> Even if the Emergency Messages were relevant here, the
> [recommendation's] futility analysis is incorrect. . . .
> The issue is not whether the ALJ could resolve or decide
> an issue of constitutional law, but instead whether the
> SSA, alerted to the problem by [the plaintiff's] timely
> objection, could have corrected any error in the ALJ's
> appointment or assigned a different ALJ to preside over
> [the plaintiff's] hearing.
>
> There seems to be little dispute that this could have
> been done.  All the [Acting] Commissioner needed to do
> was to appoint or reappoint the ALJs herself, given that
> 'inferior officers' such as the ALJs can be appointed by
> 'Heads of Departments.'  See U.S. Const., art. II, § 2,
> cl. 2.  This is in fact precisely what the head of the
> SSA eventually did.

Muhammad, 381 F. Supp. 3d at 471; see also id. at 471 n.9
("[R]aising the challenge to the ALJ could have at least made it
possible for the SSA to understand and correct the infirmity of the

ALJ's appointment, or at a minimum, repetition of the objection may have led to a change of policy or put the SSA 'on notice of the accumulating risk of wholesale reversals being incurred by its persistence.'" (quoting United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37 (1952))); Flack v. Commissioner of Soc. Sec., No. 2:18CV501, 2018 WL 6011147, at *4 (S.D. Ohio Nov. 16, 2018) (unpublished) ("[R]egardless of [EM-18003], [the plaintiff] still could have raised her Appointments Clause challenge before the ALJ."), recommendation adopted, 2018 WL 1236097 (S.D. Ohio Mar. 18, 2019) (unpublished).

Lastly, since Lucia (and notwithstanding Bradshaw and Probst), other district courts in the Fourth Circuit overwhelmingly have rejected as forfeited challenges to the SSA's ALJs under the Appointments Clause when the plaintiff did not raise the issue while his or her claim remained pending before the SSA. See, e.g., Joines v. Berryhill, No. 5:18CV65, 2019 WL 4197190, at *4 (W.D.N.C. Sept. 4, 2019) (unpublished); Lamb v. Berryhill, No. 1:18CV202, 2019 WL 4197182, at *2-3 (W.D.N.C. Sept. 4, 2019) (unpublished); Taylor v. Saul, No. 1:16CV44, 2019 WL 3837975, at *4-6 (W.D. Va. Aug. 15, 2019) (unpublished); Harris v. Saul, No. 4:18CV135, 2019 WL 2865840, at *5 (E.D.N.C. July 2, 2019) (unpublished); Lewark v. Saul, No. 2:18CV45, 2019 WL 2619370, at *2 (E.D.N.C. June 26, 2019) (unpublished); Morrison v. Berryhill, No. 5:18CV156, 2019 WL 2607026, at *1 (W.D.N.C. June 25, 2019) (unpublished); Edwards v.

Berryhill, No. 3:18CV615, 2019 WL 2619542, at *4-5 (E.D. Va. June 6, 2019) (unpublished), recommendation adopted, 2019 WL 2620005 (E.D. Va. June 26, 2019) (unpublished); Edwards v. Berryhill, No. 2:18CV121, 2019 WL 1919167, at *4 (E.D. Va. Apr. 29, 2019) (unpublished); Shelton v. Berryhill, No. 2:17CV609, 2019 WL 1330897, at *11-12 (E.D. Va. Mar. 25, 2019) (unpublished), appeal filed, No. 19-1715 (4th Cir. July 8, 2019); Shipman v. Berryhill, No. 1:17CV309, 2019 WL 281313, at *3 (W.D.N.C. Jan. 22, 2019) (unpublished).

In sum, the Court should conclude that Plaintiff's failure to raise her challenge under the Appointments Clause while her claim remained pending before the SSA forfeited her right to raise the issue on judicial review.

## II. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 10) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

September 16, 2019